# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**WILLIAM H. LIVINGSTON, D.V.M.,**
Pro se,

    Plaintiff,

v.                                                            No. CIV 98-1083 BB/JHG

**NATIONAL BROADCASTING
CORPORATION-TELEVISION
and BREEDERS CUP LIMITED,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Breeders Cup Limited's (Defendant or BCL) Motion to Dismiss, filed November 20, 1998 (Doc. 3). The Court, having reviewed the motion and memoranda, finds that the motion is well taken and will be GRANTED.

### Facts and Procedural History

Plaintiff pro se, filed a Complaint with this Court on September 9, 1998 (Doc. 1). This case arises out of allegations that BCL officials interfered with or altered the result of a horse race entered by Plaintiff's horse, "Rick's Natural Star" (RNS).[1] The claims are based in part on actions allegedly taken by a number of BCL supervisors against Plaintiff when he was in Canada and as he was trying to enter Canada. (Doc. 1). Plaintiff's allegations are also targeted at other parties, including, "Woodbine Stewards", a trainer, a "groom" hired by the trainer, Mendleson Films, and

---

[1] For purposes of this motion, the Court assumes Plaintiff owns RNS, but the relationship between the horse and Plaintiff is not clear.

1

publishers of the Daily Racing Form, among others.[2] (Doc. 1 at 3). As is explained in the following section, for the purpose of this motion, the Court will focus on the factual allegations that are directed at personal jurisdiction in this matter.[3]

In his complaint, Plaintiff alleges he submitted fees to Defendant to participate in BCL events. These fees included a pre-entry payment of $20,000 and an entry payment of $20,000 for the right to take part in a Breeders Cup race in Canada. The pre-entry fee was sent from Artesia, New Mexico to the Breeders Cup Limited in Lexington, Kentucky. No other evidence was offered by Plaintiff indicating other contacts or negotiations between the two parties. In his response to Defendant's motion to dismiss, Plaintiff alleges additional facts – unsupported by evidence – in an effort to bolster a claim of jurisdiction. Two of the more relevant allegations include:

> 2. The BCL conducts business in New Mexico.
> a. Agents for BCL work with the New Mexico Raceing [sic] Commission and the state to put on Breeders Cup Races in New Mexico.
> b. Money is accepted by the (BCL) from New Mexico race horse owners for stallion and foal nominations, and race horse entry fees, for the Breeders Cup Races. These are viable contractual obligations that are undertaken in New Mexico.

(Doc. 6). Plaintiff's claims that arise out of these alleged contacts are: 1) Implied Covenant of Good Faith and Fair Dealing, 2) Intentional Infliction of Emotional Distress, and 3) Fraud.

The same day he filed his Complaint, Plaintiff mailed a Notice of Lawsuit and Request for Waiver of Service to Defendant in Lexington, Kentucky by certified mail. A return receipt is

---

[2] Plaintiff does not make clear the relationship between these parties and BCL.

[3] This analysis is made difficult by the unclear and incomplete pleadings submitted by Plaintiff.

provided by Plaintiff in a separate pleading, however, there is no evidence before the Court that Defendant returned the waiver of service or otherwise responded to Plaintiff's mailing.

In lieu of an Answer, Defendant filed a Motion To Dismiss Pursuant to Federal Rules of Civil Procedure 12(b). (Doc. 3). Defendant moves for dismissal of Plaintiff's complaint on the following grounds: 1) this Court lacks subject matter jurisdiction; 2) this Court lacks personal jurisdiction over Defendant; 3) improper venue; 4) process and service of process are insufficient; and 5) Plaintiff has failed to properly state a claim for which relief may be granted against Defendant.

**Discussion**

I.     Service of Process

Plaintiff is proceeding pro se, and is therefore subject to somewhat less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Reynoldson v. Shillinger, 907 F.2d 124, 125-26 (10th Cir. 1990). However, this fact will not exempt him from complying with the rules of service. Birl v. Estell, 660 F.2d 592, 593 (5th Cir. 1981). It is clear from the procedural history of this case that Plaintiff did not comply with any of the methods for obtaining service of process provided in Rule 4 of the Federal Rules of Civil Procedure.

On September 9, 1998, Plaintiff prepared a Notice of Lawsuit and Request For Waiver of Service or Summons and sent it to Defendant in Lexington, Kentucky. Evidently, Plaintiff believes this is a proper means of service for his pending suit. As the Court noted in a recent opinion setting aside a default judgment against co-defendant National Broadcasting Corporation, however, Plaintiff's practice of mailing a notice and request to waive service, absent the return

waiver by Defendant, can not be considered proper service. (Doc. 25) (Memorandum Opinion and Order, dated June 30, 1999). The Opinion also stated the relevant requirement that, should Defendant choose not to return the waiver, Plaintiff must effectuate service in a manner provided by Rule 4. See Fed. R. Civ. P. 4(d)(5). As mentioned above, BCL never returned Plaintiff's waiver of service. Also, there is no evidence that Plaintiff properly served Defendant by other acceptable means. And, despite Plaintiff's claims, execution of a receipt for the certified mail cannot substitute for the waiver. See, O'Keefe v. St. Lawrence & Atlantic Railroad Co. and CN North America, 167 F.R.D. 30, 32 (D.Vt. 1996); see also David D. Siegel, Supplementary Practice Commentaries, 28 U.S.C.A. Fed. R. Civ. P. 4 (West Supp. 1999). Plaintiff's attempted service is therefore deficient.

The Court notes Plaintiff's service problems can be easily cured with proper service conforming to the Rules. However, Defendant's motion also raises a number of issues much more serious than improper service. The Court will specifically address the issue of the Court's personal jurisdiction over the claim as it appears to provide an insurmountable barrier to Plaintiff's claim against BCL.

II. Personal Jurisdiction

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas Ag v. Marathon Oil Co. 119 S.Ct. 1563, 1566 (1999). This Court must establish it has personal jurisdiction as a threshold matter, as it is "an essential element of the jurisdiction of a district ... court," without which this Court is "powerless to proceed to an adjudication." Id. at 1570 (citing Employers Reinsurance Corp. v. Bryant, 299

U.S. 374, 382 (1937)). This Court will examine this jurisdictional issue pursuant to the standards applicable to a 12(b)(2) motion. See Attwell v. LaSalle Nat'l Bank, 607 F.2d 1157, 1161 (5th Cir. 1979).

    A.    Standard of Review

The district court has discretion to determine the procedure by which it will dispose of a motion to dismiss for lack of personal jurisdiction. See Ten Mile Indus. Park v. Western Plains Service, 810 F.2d 1518, 1524 (10th Cir. 1987). In this case, the Court will decide the question on motions presented.

It is well established that Plaintiff bears the burden of establishing personal jurisdiction over Defendant. Id. However, when presented with a proper 12(b)(2) motion to dismiss, this burden is light, requiring only a prima facie showing that the Court may exercise personal jurisdiction. See Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995). In considering whether Plaintiff has met this burden, this Court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by Defendant's affidavits. See Ten Mile Indus. Park, 810 F.2d at 1524 (10th Cir. 1987). However, the Court need only accept as true well pled facts of Plaintiff's complaint, as distinguished from conclusory allegations. See id. Thus, Plaintiff's jurisdictional allegations, as supported by the Complaint and affidavits, if any, must establish that Defendant's contacts with the state would support the exercise of jurisdiction. See id. All factual disputes are resolved in Plaintiff's favor. See id.

This Court applies the standard set out above, well aware of the leniency given to claims submitted by pro se Plaintiff. However, the Court notes that, "[t]he plaintiff has a duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the

5

jurisdictional allegations are challenged by an appropriate pleading." Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989); see also Becker v. Angle, 165 F.2d 140, 141 (10th Cir. 1947). Defendant offers a challenge to the jurisdictional allegations, but for reasons unknown to the Court, does not support its argument with affidavits of its own contradicting the limited facts presented by Plaintiff. In turn, Plaintiff's response to Defendant's challenge to this Court's jurisdiction offers no proof of his supporting facts, only a list of conclusory statements that Defendant is conducting business in New Mexico. It remains, then, this Court's duty to accept as true allegations set forth in the complaint. Even if the Court accepts Plaintiff's unsupported allegations as true, however, Plaintiff simply does not meet his burden of establishing personal jurisdiction in this Court pursuant to the New Mexico Long Arm Statute.

  B. Analysis: New Mexico's Long Arm Statute

"Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum." Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 621 (10th Cir. 1988). In this case the Court applies the law of New Mexico to determine whether it has personal jurisdiction over the nonresident Defendant. New Mexico's long-arm statute provides in pertinent part as follows:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
> (1) the transaction of any business within this state;
> ....
> (3) the commission of a tortious act within this state;..."

N.M. Stat. Ann. § 38-1-16(A). New Mexico Courts equate "the transaction of business' -- insofar as the acquisition of long-arm jurisdiction under our statue is concerned -- with the due

process standard of 'minimum contacts' ...." Telephonic, Inc. v. Rosenblum, 543 P.2d 825, 827 (N.M. 1975). Under New Mexico's long-arm statute, a three part test determines a court's personal jurisdiction over a defendant: a plaintiff must show 1) that the defendant committed one of the acts enumerated in the statute, 2) that the cause of action arises from that act, and 3) that the defendant's contacts with the state of New Mexico are sufficient to satisfy the due process requirements of the federal Constitution. See Rogers v. 5-Star Management, 946 F. Supp. 907, 910 (D.N.M. 1996).

    1.    Transaction of Business Within New Mexico

With regard to the first element of Rogers, Plaintiff does not state which act enumerated in the long arm statute Defendant is alleged to have committed. However, throughout his pleadings he does assert a number of facts attempting to establish that Defendant "conducts business in New Mexico." From this the Court infers it is Plaintiff's argument that Defendant transacted business within New Mexico. (Doc. 1, 6, 10).

The first step in the Court's analysis, then, is a determination whether Defendant transacted business within New Mexico under the State's Long Arm Statute. In a recent opinion, the New Mexico Court of Appeals enumerated three factors, borrowed from the Illinois courts,[4] that assist in this determination. See Caba Limited Liability Company v. Mustang Software, Inc., No. 18842, 1999 WL 428242 (N.M. Ct. App. 1999). The factors include: 1) who initiated the transaction; 2) where the transaction was entered into; and 3) where the performance was to take

---

[4] The Court notes that Illinois court decisions are persuasive on the issue currently before the Court. See Pelton v. Methodist Hosp., 989 F. Supp. 1392 (D.N.M. 1997) (stating that because "the New Mexico long arm statute was taken from Illinois.... Illinois law is persuasive on its interpretation.")

7

place." Id. at *4. Given the facts offered by Plaintiff, it is unlikely that he satisfies the first two prongs of the Caba test. It is clear, however, that Plaintiff fails to meet the third.

As was mentioned earlier, Plaintiff relies on Defendant's collection of pre-entry, entry, or "nomination fees" from New Mexico horse owners, including himself, to establish BCL's contact with New Mexico. The nomination fees, "were solicited in New Mexico through national horse magazines."[5] (Doc. 10 at 2). Plaintiff states, "[t]he BCL in Kentucky, by accepting the nomination fee **Contracted and guaranteed that RNS would be allowed to race without interference**." (Doc. 6 at 3)(emphasis in original). Again, despite the fact that none of Plaintiff's factual allegations is supported by documentary evidence, Defendant fails to offer any countervailing affidavits regarding this claim by Plaintiff. Plaintiff also states that, "[t]he BCL advertised in New Mexico for stallions to be register [sic] by the BCL and collected a minimum fee for the owners of any stallion nominated of $1,000." (Doc. 10 at 2). In this case, the fees were "sent from Artesia New Mexico to the Breeders Cup Limited in Lexington, Kentucky, by Plaintiff." (Doc. 1 at 3).

Although, Plaintiff alleges he was responding to a magazine advertisement placed by Defendant, there is no indication that Defendant initiated the transaction. It simply appears that Plaintiff responded to a magazine advertisement to enter his horse in a race. As to the second Caba factor, there is no evidence that the transaction occurred in New Mexico. In fact, from Plaintiff's statements that he mailed his fees from Artesia, New Mexico, it appears the transaction

---

[5] The Court notes that "the Tenth Circuit has held twice that the mere placement of an advertisement in a nationally distributed newspaper or magazine 'does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser.'" Sunwest Silver, Inc., v. International Connection, Inc., 4 F. Supp. 2d 1284, 1287 (D.N.M. 1998) (quoting Federated Rural Elec. Ins. Co. v. Kootenal Elec. Coop., 17 F.3d 1302, 1305 (10th Cir. 1994)).

8

occurred in Kentucky. As to the third factor in Caba, it is clear from reading Plaintiff's Complaint that the performance was not to take place in New Mexico as that is not where the horse race was to take place. Indeed, assuming a contract existed between the parties, Defendant performed its part of the bargain in Canada. See Caba at *6 (citing Illinois case law stating that the focus of the inquiry must be on the acts of the defendant to determine whether there was a transaction of business).

Assuming arguendo, Plaintiff could establish that his dealings with BCL can be considered the "transaction of any business" contemplated by the long arm statute, that fact alone is insufficient to establish personal jurisdiction. The alleged claims which are the basis of the lawsuit must arise from that transaction of business. See Robinson-Vargo v. Funyak, 945 P.2d 1040 (N.M. 1997); see also Doe v. Roman Catholic Diocese of Boise, Inc., 918 P.2d 17 (N.M. Ct. App. 1996).

2. Arising From The Transaction

Plaintiff has not alleged that his cause of action arose from Defendant's alleged contact with New Mexico. His complaint states in pertinent part: "[u]pon information and belief, the following actions were believed done under the direction of BCL personal [sic]." (Doc. 1 at 3). Of the eleven allegations following this introduction, only two can be attributed directly to Defendant in this case. The first reads,

> "[w]hen the Plaintiff had difficulty entering Canada, because the Health Papers were delayed. Ms. Pamela Blatz-Murff, Director of Nominations and Racing was contacted. Plaintiff requested that Ricks Natural Star (RNS) be quarantined at the New Quarantine facilities at Woodbine Race Track. Ms. Murff refused RNS entry. The facilities were established for problems such as this that might arise with so many horses imported to Canada."

9

]Doc. 1 at 3). There is no connection made by Plaintiff between this statement and any contact Defendant has with New Mexico nor does Plaintiff provide a nexus between the circumstances surrounding the quarantine of RNS and the contract he alleges he entered with BCL.

The second statement attributed to BCL is a mere conclusory allegation, as opposed to a well pled fact, and as is the case with most of the statements made in his Complaint, does not serve to fulfill Plaintiff's burden of showing that this Court could properly exercise personal jurisdiction over BCL.[6] See Ten Mile Indus. Park, 810 F.2d at 1524. As was stated earlier, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

Of the statements that can liberally be construed as factual and not conclusory, none satisfy the second prong of the Robinson-Vargo and Doe. Thus, Plaintiff can not meet its burden of establishing personal jurisdiction of this Court over BCL.

D.   Conclusion

In opposition to Defendant's motion, Plaintiff has attached no evidence in support of his claim that jurisdiction is proper, but instead relies solely on the allegation of their complaint and brief. Although the Court recognizes that Plaintiff's burden to present a prima facie showing of personal jurisdiction is a light one, especially considering Plaintiff's pro se status, Plaintiff is required to produce some evidence to rebut Defendant's challenge to jurisdiction. See Phillips USA, Inc., v. Allflex USA, Inc., 857 F. Supp. 789 (D.Kan. 1994); see also Kern v. Jeppesen

---

[6] It reads, "[u]pon information and belief Breeders Cup personnel asked Ontario Jockey Club President David S. Wilmot, to have the Woodbine Stewards to tell Jockey Lisa McFarland to get RNS out of the way of the good horses. She apparently did this at the half mile point of the race, RNS was in the lead." (Doc. 1 at 3).

Sanderson, Inc., 867 F. Supp. 525 (S.D.Tex. 1994) (When faced with a motion to dismiss for lack of personal jurisdiction filed pursuant to Rule 12(b)(2), a plaintiff must do more than merely allege that jurisdiction exists. It must carry its burden by establishing facts to show that jurisdiction has been properly invoked.). Under the most liberal pleading standard, Plaintiff has failed to satisfy any reasonable application of the New Mexico Long Arm statute.

Thus, the Court does not deem it unfair to Plaintiff to dismiss his claim against BCL at this time on the basis that Plaintiff has not made a minimal showing, a prima facie showing, in support of the exercise of personal jurisdiction over this Defendant. However, the Court recognizes the Tenth Circuits instruction to extend, "to pro se plaintiffs an opportunity to remedy defects potentially attributable to their ignorance of federal law and motion practice...." Reynoldson, 907 F.2d at 126 (10th Cir. 1996). The Court therefore will dismiss this case without prejudice. The Court believes Defendant's Motion To Dismiss puts Plaintiff on notice of the deficiencies that may exist in his pleadings if Plaintiff should decide to file another complaint and properly serve Defendant, a basis for personal jurisdiction must be clearly set out.

Wherefore,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Breeders Cup Limited on November 20, 1998 (Doc. 3) be and hereby is, GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint (Doc. 1) is hereby DISMISSED without prejudice.

Dated at Albuquerque this 4th day of August, 1999.

                                                BRUCE D. BLACK
                                                United States District Judge

Plaintiff, pro se
William H. Livingston, D.V.M.
R223 North 13th Street
Artesia, NM 88210

Attorney for Defendant BCL
Timothy M. Sheehan
Sheehan, Sheehan, & Stelzner
P.O. Box 271
Albuquerque, New Mexico 87103

Attorney for Defendant NBC
Jay D. Hertz
Sutin, Thayer & Browne
P.O. Box 1945
Albuquerque, New Mexico 87103